**LB FOLDING COMPANY, INC., Appellant,**

v.

**GERGEL–KELLEM CORPORATION, d.b.a. Watt Printing, Appellee.**

[Cite as *LB Folding Co., Inc. v. Gergel–Kellem Corp.* (1994), 94 Ohio App.3d 511.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 64929.

Decided May 2, 1994.

*Ziegler, Metzger & Miller* and *Christopher W. Siemen,* for appellant.
*Stavole & Miller* and *Dwight A. Miller,* for appellee.

PORTER, Judge.

Plaintiff–appellant LB Folding Company, Inc. ("LB") appeals from the trial court's granting of summary judgment in favor of the defendant-appellee, Gergel–Kellem, Inc., d.b.a. Watt Printing ("Watt"). LB claims the court erred in holding that the lapse of LB's security interest in certain machinery operated retroactively, thereby rendering it unperfected as to Watt's pre-lapse purchase of the secured collateral under R.C. 1309.40(B)(1). LB also argues that the court incorrectly granted summary judgment to Watt on LB's conversion and execution lien claims. We find no error in the proceedings below and affirm the summary judgment for defendant Watt.

On December 2, 1985, LB obtained a judgment in the amount of $40,325.15 against Napoleon Clay, d.b.a. Clay's Bindery Service, d.b.a. Clay's Folding Service ("Clay") in the Summit County Court of Common Pleas, with monthly interest from August 1, 1985. Following entry of the judgment, by agreement, Clay executed a promissory note for the payment of the judgment at the rate of $150 per month.

To secure the promissory note, Clay, on April 10, 1986 and December 18, 1986, executed security agreements which granted LB a security interest in certain scheduled business personalty, including a McCain stitching trimmer at issue in this litigation. Paragraph 9 of the security agreements states:

"Debtor will not sell or offer to sell or otherwise transfer or encumber the property without written consent of secured party; will keep the collateral in good order and repair and will not waste or destroy the collateral."

Paragraph 13 of the security agreements provides:

"Upon the happening of any of the following events or conditions, namely: (1) default in the payment or performance of any of the Obligations or of any

covenant or liability contained or referred to herein or in any note evidencing any of the Obligations; * * * (3) loss, theft, substantial damage, destruction, sale or encumbrance to any or of any of the Collateral, * * * Secured Party at its option may declare all of the Obligations to be immediately due and payable and shall then have the remedies for a Secured Party under the laws under the State of Ohio, including, without limitation thereto, the right to take possession of the Collateral, and for that purpose Secured Party may, so far as Debtor can give authority for, enter upon any premises on which the Collateral or any part thereof may be situated and removed the same therefrom * * *."

UCC financing statements reflecting the security agreements were duly filed with both the Cuyahoga County Recorder's Office and the Secretary of State's Office on or about January 30, 1987.

Subsequent to the filing of the financing statements and contrary to Paragraph 9 aforesaid, Clay sold some of the above equipment to Watt on or about May 8, 1987. On or about February 3, 1988, LB caused the Cuyahoga County Sheriff's Office to levy upon the equipment in the possession of Watt. At that time the sheriff's department located and tagged two used Stahl folders, one Lawson paper cutter, one NYGN–Dally Drill, and a McCain stitching trimmer.

Sometime in 1989, Watt delivered the McCain stitching trimmer to Turner Equipment, an equipment broker, to procure a purchaser for said machine. At that time, LB, by and through its counsel, informed both Turner Equipment and Watt of its security interest in the machine and the sheriff's levy. LB demanded that if the machine had not been sold that complete information be provided pertaining to the location of the machine and that, if it had been sold, the proceeds be delivered to it in order to "partially satisfy LB Folding's security interest."

Despite said notice, Watt proceeded to sell the McCain stitching trimmer for approximately $2,000. To date LB has received no funds from the sale of said machine.

On or about June 31, 1992, LB again levied, via the sheriff's office, upon the machinery and equipment held by Watt. At the time of this levy the sheriff's office located the Stahl folder, the Lawson paper cutter, and the NYGN–Dally drill, which were sold to satisfy the underlying judgment.

We will address the assignments of error in the order asserted and discuss I and II together because they present the same issues:

"I. The trial court erred in granting Watt Printing's motion for summary judgment, as Watt Printing was not entitled to judgment as a matter of law given the fact that appellant had a valid security interest in the equipment.

"II. The trial court erred in granting Watt Printing's summary judgment motion as Ohio Revised Code Section 1309.20(A) mandates LB Folding's interest in the equipment not to be subordinate to the interest and claims of Watt Printing."

The basic facts are not disputed as to the filings and the conduct of the parties. This appeal turns on the legal effect to be given the security devices created and filed under the UCC financing statements and which party, LB or Watt, has a superior interest in the stitch trimmer. The ultimate legal issue is whether, when LB's financing statement lapsed upon the expiration of five years without continuation, that lapse created an "unperfected" security interest which related back to the prior date on which Watt purchased the trimmer.

By operation of law, pursuant to R.C. 1309.40(B)(1), a filed financing statement lapses on the expiration of a five-year period unless a continuation statement is filed prior to lapse. LB has admitted in this case that no such continuation statement was filed. R.C. 1309.40(B)(1) (UCC 9–403) provides as follows:

"Except as provided in divisions (B)(2) and (F) of this section, a filed financing statement is effective for a period of five years from the date of filing. *The effectiveness of a filed financing statement lapses on the expiration of the five-year period unless a continuation statement is filed prior to the lapse.* If a security interest perfected by filing exists at the time insolvency proceedings are commenced by or against the debtor, the security interest remains perfected until termination of the insolvency proceedings and thereafter for a period of sixty days or until expiration of the five-year period, whichever occurs later. *Upon lapse the security interest becomes unperfected, unless it is perfected without filing. If the security interest becomes unperfected upon lapse, it is deemed to have been unperfected as against a person who became a purchaser or lien creditor before lapse.*" (Emphasis added.)

The Official Comments to R.C. 1309.40(B), similar to those in the UCC, state as follows:

"3. Under subsection 2 [ (B)(1) ] the security interest becomes unperfected when filing lapses. Thereafter, the interest of the secured party is subject to defeat by purchasers and lienors even though before lapse the conflicting interest may have been junior. * * *"

Thus, the statute states on its face that if a security interest lapses because a continuation is not filed, the interest becomes unperfected "as against a person who became a purchaser or lien creditor before lapse." Therefore, Watt argues that since it bought the trimmer "before the lapse," LB's security interest therein was unperfected and subordinate to the good faith purchaser for value. Plaintiff LB concedes that the language is plain on its face. But, it argues that the court

must also take into account the priority established by R.C. 1309.20, which describes to whom or under what circumstances an unperfected security interest is subordinated. In short, Watt argues that R.C. 1309.40(B)(1) must be reconciled with R.C. 1309.20, while LB argues that R.C. 1309.40–(B)(1) controls and stands alone.

There are two leading Ohio cases addressing the consequences of failure to continue a perfected financing statement. In *E. Indiana Prod. Credit Assn. v. Farmers State Bank* (1972), 31 Ohio App.2d 252, 60 O.O.2d 410, 287 N.E.2d 824, Farmers State Bank had a prior recorded financing statement to that of Eastern Indiana. Rather than file a continuation statement, it filed a new financing statement. After the debtor filed bankruptcy, the trustee in bankruptcy abandoned any claim to the property and Farmers State Bank sold the collateral and kept the portion of the sales proceeds attributable to its claim and remitted the balance to Eastern Indiana. Eastern Indiana then brought suit, claiming that Farmers State Bank's security interest had lapsed pursuant to R.C. 1309.40(B)(1) and that Farmers State Bank had converted proceeds belonging to Eastern Indiana. The trial court agreed with Farmers State Bank, but the court of appeals reversed. Ruling that the filing of a new financing statement did not constitute a continuation statement, the court held that the secured interest of Farmers State Bank had lapsed, making its interest junior to Eastern Indiana. The court then quoted from the editorial comments in R.C. 1309.40:

" 'Under the last sentence of division (B) the security interest becomes unperfected when filing lapses. Thereafter, the interest of the secured party is subject to defeat by those persons who take priority over an unperfected security interest (see R.C. Section 1309.20), and R.C. Section 1309.31(E), the holder of a perfected conflicting security interest is such a person even though before lapse the conflicting interest was junior. Compare the situation arising under R.C. Section 1309.03(C) when a perfected security interest under the law of another jurisdiction is not perfected in this state within four months after the property is brought into this state.' " *Id.*, 31 Ohio App.2d at 255, 60 O.O.2d at 411–412, 287 N.E.2d at 826.

The *E. Indiana* court quoted the editorial comments, which themselves refer to R.C. 1309.20 (UCC 9–301). R.C. 1309.20(A)(3) provides:

"(A) Except as otherwise provided in division (B) of this section, an unperfected security interest is subordinate to the rights of:

" * * *

"(3) in the case of goods, instruments, documents, and chattel paper, a person who is not a secured party and who is a transferee in bulk or other buyer not in ordinary course of business, to the extent that he gives value and receives

delivery of the collateral without knowledge of the security interest and before it is perfected[.]"

If we follow the rationale of *E. Indiana,* Watt is obviously a transferee in bulk and is at least a buyer not in the ordinary course of business and its rights pursuant to *E. Indiana* would be superior to an unperfected security interest caused by the later lapse of LB's financing statement.

■ However, LB argues that since the financing statement was in force and a matter of public record when Watt purchased the property in question, Watt cannot fit into any of the categories under R.C. 1309.20(A)(3), since Watt had at least constructive knowledge of the security interest and obtained possession of the property while the security interest was still perfected. However, R.C. 1309.40(B)(1) states that upon lapse, the security interest "is deemed to have been unperfected as against a person who became a purchaser or lien creditor before lapse." The ordinary import of this language compels the conclusion that the lapse of perfection is meant to relate back to an earlier time when the bona fide purchase was made. Thus, by reason of the lapse of LB's security interest caused by failure to file a continuation statement, Watt is deemed to have purchased the property when it was unperfected. Therefore, if, as required by R.C. 1309.40(B)(1), LB's security interest is deemed to have been unperfected as of May 8, 1987 when Watt purchased said equipment, Watt is deemed to have purchased the equipment without notice of and while LB's interest was unperfected. Hence, Watt fits into R.C. 1309.20(A)(3), and there is no conflict between that section and the provisions of R.C. 1309.40(B)(1).

Other jurisdictions in construing UCC 9–403 have also explicitly ruled that lapses because of failure to file a continuation statement relate back to the time of purchase by an intervening pre-lapse purchaser. In *United States v. Cent. Livestock Corp.* (D.C.Kan.1985), 616 F.Supp. 629, the court was faced with a claim by the Farmers Home Administration in a suit for conversion of certain livestock based on a recorded lien on said livestock which had lapsed after the livestock had been sold to defendant Central Livestock Corp. Under a Kansas statute identical to UCC 9–403 and R.C. 1309.40(B), the court granted summary judgment for the defendant, dismissing the conversion claim by the government:

"Plaintiff does not dispute that the FMHA failed to file a continuation statement covering its May 22, 1978 financing statement. Under K.S.A. 84–9–403(2) that financing statement lapsed five years later, on May 22, 1983. Defendant Central Livestock, which gave value for and received the livestock in 1981, was a buyer in the ordinary course of business as defined in K.S.A. 84–1–201(9). Plaintiff's status as an unperfected financing statement, relates back in time to 1981 as against Central, a post-perfection pre-lapse purchaser. K.S.A. 84–9–403(2). The rights of the two parties are governed by K.S.A. 84–9–301(1)(c),

which states that an unperfected security interest is subordinate to the rights of a buyer of farm products in the ordinary course of business. Defendant Central is entitled to judgment on the merits." *Id.* at 634.

Likewise, in *Banque Worms v. Davis Constr. Co., Inc.* (Ky.App.1992), 831 S.W.2d 921, the Kentucky court rejected an argument similar to LB's argument in this case that a subsequent buyer could not buy without knowledge because he had constructive knowledge of the public records of the financing statement on file. The *Banque Worms* court rejected that argument and specifically referred to KRS 355.9–301 (UCC 9–301):

"True enough, KRS 355.9–201 states that except as otherwise provided, a security agreement is effective against purchasers of the collateral. If the security agreement is unperfected, however, the agreement is subordinate to the rights of certain specified persons. KRS 355.9–301. Among the persons protected is a purchaser who is not a secured party and who is not a buyer in the ordinary course of business, to the extent that the purchaser 'gives value and receives delivery of the collateral without knowledge of the security interest and before it is perfected.' KRS 355.9–301(1)(c). Appellant acknowledges that for purposes of this statute Davis (1) is not a secured party, (2) did not buy the truck in the ordinary course of business, and (3) gave value for the truck. However, appellant contends that Davis is not entitled to avail itself of the protection afforded by KRS 355.9–301(1)(c) because Davis is chargeable with constructive knowledge of the unperfected security interest since both the financing statement and the continuation statement respecting the truck were on file in the Harlan County Clerk's Office. We are constrained to disagree.

"The general definition section of the code states that a person 'knows' or has 'knowledge' of a fact when he or she has actual knowledge of it. KRS 355.1–201(25). Actual knowledge is not defined as including the concept of constructive knowledge. For the purposes of KRS 355.9–301(1)(c), therefore, Davis cannot be deemed to have had knowledge of appellant's security agreement merely because it arguably should have known of it. Since appellant's security agreement was unperfected and it is undisputed that Davis acquired the rock truck under circumstances described in KRS 355.9–301(1)(c) without actual knowledge of the security interest, the court did not err by adjudging that Davis' interest in the vehicle is superior to appellant's." *Id.,* 831 S.W.2d at 925.

These authorities are sound and persuasive. They support the court's action below.

Some courts in other states have held that knowledge of the secured creditor's interest in the property is not relevant to UCC 9–403. See *State Sav. Bank of Hornick v. Onawa State Bank* (Iowa 1985), 368 N.W.2d 161 (the court held that upon lapse of a senior creditor's financing statement, competing secured creditors

with actual or constructive knowledge of the creditor's interest take priority); *Growth Properties v. Lempert* (1983), 144 Cal.App.3d 983, 193 Cal.Rptr. 102 ("unlike § 9301, § 9403 does not refer to 'knowledge' * * * The knowledge of the purchaser is irrelevant to a determination of priorities under § 9403."); *In re Williams* (N.D.Miss.1988), 82 B.R. 430 ("the section of the Uniform Commercial Code dealing with the effect of a lapsed filing [*i.e.* § 9–403] does not refer to knowledge. When a security interest becomes unperfected upon lapse, it is deemed unperfected as against a person who became a lien creditor before lapse, notwithstanding knowledge by the junior lien creditor of the prior security interest."); *Bostwick–Braun Co. v. Owens* (E.D.Wis.1986), 634 F.Supp. 839 ("any notice of F & M's once perfected security interest Bostwick–Braun may have had as a junior secured creditor is irrelevant to the effect of F & M's failure to continue its interest. All courts which have decided the issue agree that, since the purpose of the statutory filing requirements is, in most instances, to resolve notice of disputes consistently and predictably by reference to constructive or statutory notice alone, UCC 9–403(3) precludes consideration of a junior creditor's actual notice of a now lapsed prior filing by a competing senior creditor.").

LB asserts that *Robinson v. Flynn* (1982), 2 Ohio St.3d 19, 2 OBR 506, 442 N.E.2d 454, supports its position. In *Robinson,* a security agreement and financing statement were signed and filed with the Secretary of State on May 30, 1974 and with the Recorder's Office of Butler County on August 5, 1975. The court in its ruling specifically held as follows:

" * * * The fact that the security interest may not have been perfected until 1975, under the provisions of R.C. 1309.21, does not affect the right of the holders of the security interest to assert their claims. Rather, it goes to the priority of the claim. See R.C. 1309.20." *Id.* at 22, 2 OBR at 508–509, 442 N.E.2d at 457.

The issue in *Robinson* was a matter of priority; there was no issue concerning a lapsed security interest under R.C. 1309.40(B)(1). *Robinson* does not control the case at issue.

The second Ohio case which is similar to the instant case is *Davis v. Ford Motor Co.* (1984), 14 Ohio App.3d 39, 14 OBR 43, 469 N.E.2d 1022. It provides additional support for our decision on the consequences of failure to file a continuation statement. Davis was the assignee of a recorded security interest in certain remanufactured automobile parts. During the time a financing statement covering these parts was in effect in favor of Davis, the parts were repurchased by Ford Motor Company. Thereafter, Davis failed to file a continuation statement and the financing statement lapsed. Davis then sued, claiming priority over Ford. The trial court granted summary judgment for Ford. Davis appealed, but the court of appeals upheld the trial court:

"The plain language of the statute dictates that because appellants failed to file a continuation statement before October 25, 1981, their security interest became unperfected on that date as to appellee, even though appellee became a purchaser of the collateral before lapse." *Id.*, 14 Ohio App.3d at 40, 14 OBR at 44, 469 N.E.2d at 1024.

The *Davis* court reviewed a number of decisions outside Ohio and ruled that R.C. 1309.40(B)(1) mandated that since the security interest in the collateral had lapsed, the buyer of the collateral would prevail even though the buyer had bought the collateral during a point in time when the financing statement was valid:

"The case law construing R.C. 1309.40(B)(1) and similar statutes, *supra*, and the plain language of R.C. 1309.40(B)(1), dictate the conclusion that because appellants failed to file a continuation statement prior to October 25, 1981, their security interest became unperfected on that date as to appellee, which became a purchaser of the collateral before lapse." *Id.* at 41, 14 OBR at 45, 469 N.E.2d at 1024–1025.

The instant case falls within the principles announced in *E. Indiana* and *Davis*, *supra*. LB had a recorded financing statement which lapsed on January 28, 1992 at the expiration of five years. Prior thereto, on May 8, 1988 Watt purchased the collateral. However, LB failed to file a continuation statement and, pursuant to R.C. 1309.40(B)(1), the security interest in the collateral lapsed. Thus, the security interest became "unperfected" as to Watt, who purchased during the period in which LB once had a secured lien. Watt's right to the collateral is superior to LB's. The trial court was correct in finding that Watt is entitled to summary judgment. Assignments of Error I and II are overruled.

"III. The trial court erred in granting Watt Printing's summary judgment motion upon the conversion claim, as it is clear that at the time Watt Printing unlawfully converted a portion of the equipment for its own use, LB Folding had a valid security interest and superior rights to the equipment then [*sic*] Watt Printing."

What we have held above disposes also of LB's assignment of error on its conversion claim. The elements of conversion are as follows:

"The tort of conversion has been defined as a distinct act of dominion wrongfully exercised over another's personal property in denial of his right or inconsistent therewith." (Footnote omitted.) 18 Ohio Jurisprudence 3d (1980), Conversion and Replevin, Section 1.

In the present case, although LB claims that Watt "converted Plaintiff's property to its own use," LB never had an ownership interest in the McCain stitch trimmer. As set forth in the discussion above, LB's security interest in the

machine became unperfected on January 30, 1992 when LB failed to continue the financing statement; hence, when LB filed its complaint on March 24, 1992, it no longer had any interest in the McCain stitch trimmer superior to Watt's, so there could be no conversion.

See *Hanley Implement v. Riesterer Equip.* (1989), 150 Wis.2d 161, 441 N.W.2d 304, based on the Wisconsin version of UCC 9–403. Hanley Implement had a recorded security interest in a piece of farm equipment known as a "cornhead." During the period of time when the security agreement was in effect, the original debtor sold the cornhead to defendant Riesterer Equipment, who later sold the machine to a third party. The original debtor discharged his obligation to Hanley in bankruptcy and Hanley allowed its lien to lapse and then brought an action for conversion against Riesterer. The trial court granted summary judgment, dismissing the conversion claim and the appellate court affirmed:

"The same 'relate back' analysis applies to a person who purchased the property during the five-year period. If the secured creditor fails to file a continuation statement during the five-year period, its interest is deemed unperfected at the time of the prelapse purchase. Stated another way, when the perfection lapses, 'the security interest is, with respect to the purchaser and lien creditor, the same as though perfection had never existed, and the secured creditor has only the standing of an unperfected secured creditor under UCC s. 9–301.' * * * Thus, the prelapse purchaser obtains the property free of the secured interest.

"Here, Hanley never filed a continuation statement. Under sec. 409.403(2), its security interest is deemed to have been unperfected as against Riesterer, who became a purchaser before the lapse. Under these circumstances, Hanley's security interest was deemed unperfected when Riesterer purchased the cornhead unit. Consequently, Riesterer took the property free and clear of the previously secured interest and there can be no conversion. Therefore, the trial court correctly dismissed Hanley's complaint for conversion against Riesterer." *Id.,* 150 Wis.2d at 163–64, 441 N.W.2d at 307.

In *Cent. Livestock, supra,* the court also granted summary judgment on the conversion claim on similar facts; see, also, *Growth Properties, supra,* to the same effect. This assignment of error is overruled.

"V. The trial court erred granting Watt Printing's summary judgment motion, as LB Folding has a valid execution lien upon all the equipment purchased by Watt Printing from Clay, which has not yet been discharged."

LB claims that the trial court erred in granting Watt summary judgment because of the alleged execution lien. This issue was not raised below.

It is a long-standing rule of appellate procedure that no new issues can be raised in the appellate court which were not raised before the trial court. For instance, in *Republic Steel Corp. v. Cuyahoga Cty. Bd. of Revision* (1963), 175 Ohio St. 179, 23 O.O.2d 462, 192 N.E.2d 47, the syllabus of the case is as follows:

"Issues not raised in the lower court and not there tried and which are completely inconsistent with and contrary to the theory upon which appellants proceeded below cannot be raised for the first time on review." See, also, *Thomas v. Studley* (1989), 59 Ohio App.3d 76, 81, 571 N.E.2d 454, 461; *Skinner v. Turner* (1986), 30 Ohio App.3d 232, 235, 30 OBR 390, 393–394, 507 N.E.2d 392, 395; *Ware v. Richey* (1983), 14 Ohio App.3d 3, 9, 14 OBR 6, 11–12, 469 N.E.2d 899, 905–906.

Therefore, we will not address the execution lien argument. This assignment of error is overruled.

The judgment is affirmed.

*Judgment affirmed.*

JAMES D. SWEENEY, P.J., and KRUPANSKY, J., concur.