DA 07-0057

IN THE SUPREME COURT OF THE STATE OF MONTANA

2008 MT 355

THERMAL SUPPLY, INC.,

      Plaintiff and Appellant,

  v.

BIG SKY BEEF, LLC, STAN VAN ETTEN, C.R. SAULSBURY, SR., JERRY W. BRATTON, JOHN T. DANIELL, and UX RANCH, INC.,

      Defendant, Appellee and Cross-Appellant.

APPEAL FROM:    District Court of the Seventeenth Judicial District,
In and For the County of Phillips, Cause No. DV 04-012
Honorable John C. McKeon, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Court E. Ball, Attorney at Law; Billings, Montana

      For Appellee:

          Keith A. Maristuen, Attorney at Law; Havre, Montana

Submitted on Briefs:  July 23, 2008

Decided:   October 21, 2008

Filed:

_____
               Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Appellant Thermal Supply, Inc. (Thermal) appeals the order of the Seventeenth Judicial District Court, Phillips County, granting Appellee C.R. Saulsbury's (Saulsbury) motion for summary judgment, wherein the court concluded that Thermal had not created a security interest. Saulsbury cross-appeals from the District Court's denial of its motion for summary judgment on the alternative ground that Thermal's failure to timely file a continuation statement caused the original financing statement to lapse. We conclude that the issue raised by Saulsbury on cross-appeal is determinative. Therefore, we do not reach the issue raised in Thermal's appeal. We affirm.

¶2 We consider the following cross appeal issue:

¶3 Did the District Court err in denying Saulsbury's motion for summary judgment on the ground that the financing statement did not lapse because the filing of a judicial action tolled the five period of effectiveness?

## FACTUAL AND PROCEDURAL BACKGROUND

¶4 In anticipation of establishing a meat packing plant in Malta, Montana, Big Sky Beef, LLC (Big Sky) entered into a contract in the summer of 2000 with Lafond Enterprises (Lafond) to install the prospective plant's refrigeration equipment. Shortly thereafter, Lafond contracted to acquire the refrigeration equipment from Thermal.

¶5 Lafond, Big Sky, and Thermal entered into a Joint Check Agreement and Assignment dated August 3, 2000. According to the Agreement, Lafond assigned Thermal the right to receive $231,256 from any monies due or that may become due to

2

Lafond from Big Sky. Big Sky agreed to hold $231,256 in trust for Thermal, make payments directly to Thermal within 30 days of delivery, and to guarantee payment to Thermal. Thermal shipped the refrigeration equipment to Big Sky, but it was never installed.

¶6 On June 25, 2001, a financing statement signed by representatives of Big Sky and Thermal was filed with the Montana Secretary of State, naming Big Sky as debtor and Thermal as the secured party. A list identifying the refrigeration equipment was attached to the financing statement.

¶7 In May of 2001, Big Sky Beef signed a promissory note for $250,000 and executed a security agreement to secure the note to B-4 Ventures, LLC (B-4 Ventures). B-4 Ventures then assigned all of its rights to the note and agreement to Saulsbury. On July 2, 2001, a financing statement was filed in the office of the Montana Secretary of State signed by Big Sky as debtor, B-4 Ventures as creditor, and Saulsbury as assignee. This financing statement contains broad language encompassing all equipment owned by Big Sky. On June 26, 2006, Saulsbury filed a continuation statement, extending its financing statement's period of effectiveness until 2011.

¶8 Thermal did not receive payment and thereafter initiated this action on March 19, 2004, claiming it had a perfected security interest in the refrigeration equipment. Saulsbury defended,[1] denying that Thermal had a security interest and, if it did, that the interest had lapsed. Thermal moved for summary judgment and was denied by the

---

[1] Except for Saulsbury, the defendants were defaulted after service for failing to appear and thereafter only the claim between Thermal and Saulsbury remained.

3

District Court, which held that the documents of the transaction were insufficient in themselves to create a security interest as a matter of law, but that ultimate resolution of the issue would be reserved for trial. Saulsbury also moved for summary judgment, arguing that Thermal's failure to file a timely continuation statement had caused Thermal's financing statement to lapse. The Court denied Saulsbury's motion, reasoning that any need for filing a continuation statement had been tolled by Thermal's initiation of litigation.

¶9 Saulsbury then moved for summary judgment on the same grounds the District Court had used to deny Thermal's motion—that Thermal had not initially created a security interest in the equipment. At a summary judgment hearing, after Thermal acknowledged to the court that no other documents signed by Big Sky and relevant to the creation of a security interest between Thermal and Big Sky existed, the court granted Saulsbury's subsequent motion for summary judgment, concluding a security interest had not been created and entering judgment in full in favor of Saulsbury. Thermal appeals the District Court's grant of summary judgment to Saulsbury, and Saulsbury cross appeals the denial of summary judgment on the issue of the allegedly lapsed financing statement.

**STANDARD OF REVIEW**

¶10 We review a district court's grant or denial of a motion for summary judgment de novo applying the same criteria applied by the court as set forth in M. R. Civ. P. 56.

4

*Stockman Bank of Mont. v. Mon-Kota Inc.*, 2008 MT 74, ¶ 11, 342 Mont. 115, ¶ 11, 180

P.3d 1125, ¶ 11.  Rule 56 provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

"The party moving for summary judgment must establish the absence of genuine issues of material fact and entitlement to judgment as a matter of law." *Stockman*, ¶ 11.  If the district court determines there are no genuine issues of material fact, it then determines whether the moving party is entitled to judgment as a matter of law.  *Stockman*, ¶ 11.  This Court reviews the district court's conclusions of law for error.  *Stockman*, ¶ 11.  "If we reach the same conclusion as the district court, but on different grounds, we may nonetheless affirm the district court's judgment."  *Germann v. Stephens*, 2006 MT 130, ¶ 21, 332 Mont. 303, ¶ 21, 137 P.3d 545, ¶ 21.

## DISCUSSION

**¶11  Did the District Court err in denying Saulsbury's motion for summary judgment on the ground that the financing statement did not lapse because the filing of a judicial action tolled the five year period of effectiveness?**

¶12  Saulsbury argues that the security interest claimed by Thermal lapsed when Thermal failed to file a continuation statement.  Thermal argues the District Court correctly denied summary judgment on this issue, because any need to file a continuation statement was tolled when Thermal initiated suit to enforce its security interest.

5

¶13 Generally, a financing statement is effective for a period of five years from the date of filing. Section 30-9A-515(1), MCA. "The effectiveness of a filed financing statement *lapses* on the expiration of the period of its effectiveness unless before the lapse a continuation statement is filed . . . ." Section 30-9A-515(3), MCA (emphasis added). Upon "timely filing of a continuation statement," the effectiveness of the initial financing statement continues for another period of five years, and succeeding continuation statements may be filed. Sections 30-9A-515(1) and (5), MCA. If a continuation statement is not filed, the financing statement lapses and "is deemed never to have been perfected." Section 30-9A-515(3), MCA.

¶14 Thermal filed its original financing statement on June 25, 2001, and never filed a continuation statement. Thermal initiated suit on its claimed security interest on March 19, 2004. Therefore, unless the initiation of litigation had the effect of tolling or extending the period of effectiveness of the financing statement, Thermal's security interest, if any, would have lapsed five years after the original filing date, in June 2006.

¶15 Currently, under Revised Article 9, there is no provision which expressly tolls or extends the period of effectiveness of a financing statement during litigation.[2] The District Court concluded that the five year period of effectiveness was nonetheless tolled during litigation by virtue of the "relate back" provisions of § 30-9A-601(5), MCA. That statute states:

---

[2] Revised Article 9 was adopted by the Legislature in 1999, with a delayed effective date of July 1, 2001, but including provisions governing financing statements filed before the effective date. *See* Secs. 162-171, Ch. 305, L. 1999. The applicability of Revised Article 9 to the security interests asserted herein is not disputed.

6

> If a secured party has reduced its claim to judgment, the lien of any levy that may be made upon the collateral by virtue of an execution based upon the judgment relates back to the earliest of:
>> (a) the date of perfection of the security interest . . . [or]
>> (b) the date of filing of a financing statement covering the collateral[.]

Notably, this provision does not address whether a judgment must be obtained within the period of effectiveness in order for it to "relate back" to the original filing date, or whether the period of effectiveness is tolled during litigation. The Official Comments indicate that this provision "makes clear that any judicial lien that the secured party may acquire against the collateral effectively is a continuation of the original security interest (if perfected) . . . ." Section 30-9A-601 cmt. 6, MCA (emphasis added). Consistent therewith, there is precedent holding that perfected status must be maintained throughout litigation to maintain a priority position—or to "relate back"—in the enforcement of a UCC secured interest. In *Hassell v. First Pa. Bank, N.A.*, 254 S.E.2d 768 (1979), a creditor filed a financing statement in January of 1971 and then initiated suit to enforce its security interest in February of 1973. *Hassell*, 254 S.E.2d at 297. The creditor obtained judgment against the debtor in April 1975 and levied said judgment in 1977. *Hassell*, 254 S.E.2d at 297. Because the creditor failed to file a continuation statement, the North Carolina Court of Appeals held that the security interest lapsed in 1976 and, absent a perfected interest, the judgment lien did not relate back to the filing date—even though a judgment had been obtained during the period of effectiveness. *Hassell*, 254 S.E.2d at 298 ("We hold that the lien by levy pursuant to judgment does not relate back to the filing date of the financing statement when the security interest has become

unperfected by the lapse of time under N.C.G.S. 25-9-403(2)."); *see also Stearns Mfg. Co. Inc. v. Natl. Bank & Trust Co. of C. Pa.*, 12 U.C.C. Rep. Serv. 189, 193-94 (1972) ("While the lien of plaintiff's execution levy would have related back to the date of perfection of plaintiff's security interest if it had continued to be perfected, such relation back cannot be held to restore ab initio perfection and priority which it had lost, to the detriment of defendant's interest which had acquired priority upon the lapse of plaintiff's interest.")

¶16   Changes to the UCC under Revised Article 9 re-enforce this conclusion.  Former § 30-9-403(2), MCA,[3] part of the original Article 9, contained a limited tolling provision, which stated:

> If a security interest perfected by filing exists at the time insolvency proceedings are commenced by or against the debtor, the security interest remains perfected until 60 days after termination of the insolvency proceedings or until expiration of the 5-year period, whichever occurs later.

Although this tolling provision was applicable only to insolvency and bankruptcy proceedings, it was used analogously to argue for tolling of the period of effectiveness for purposes of other litigation.  *See Avant Petroleum, Inc. v. Banque Paribas*, 853 F.2d 140, 144 (2d Cir. 1988).  However, this provision was not included within Revised Article 9, the reasons for and consequences of which are discussed by Comment 4 of the Official Comments to Section 30-9A-515, MCA:

> Under former Section 9-403(2) [30-9-403(2), now repealed], lapse was tolled if the debtor entered bankruptcy or another insolvency proceeding.

---

[3] Section 30-9-403, MCA, was repealed by Sec. 168, Ch. 305, L. 1999, the same law which adopted Revised Article 9.

8

Nevertheless, being unaware that insolvency proceedings had been commenced, filing offices routinely removed records from the files as if lapse had not been tolled. *Subsection (c) [subsection (3)] deletes the former tolling provision and thereby imposes a new burden on the secured party: to be sure that a financing statement does not lapse during the debtor's bankruptcy.* The secured party can prevent lapse by filing a continuation statement . . . [emphasis added].

¶17 Thus, the tolling provision within the former law has been repealed. "The revised act simply deletes the tolling rule. Instead, it requires in all cases that continuation statements be filed." G. Ray Warner, *Continuing Perfection during Bankruptcy under Revised Article 9*, 20 Am. Bankr. Inst. J., 22 (April, 2001). Though the former tolling provision was facially applicable only to insolvency proceedings, the repeal has likewise removed the argument that tolling should be analogously applicable to other litigation. As Comment 4 to § 30-9A-515, MCA, states, Revised Article 9 "imposes a new burden upon the secured party." The practical considerations for the repeal mentioned by Comment 4 are also noteworthy. Filing offices routinely remove financing statements which lapse for failure to file a continuation statement, thereby eliminating notice of a secured interest. Because financing statements provide notice to parties beyond those involved in the litigation, requiring continuation statements likewise serves to better notify the public about claimed interests.

¶18 We hold that any perfected security interest Thermal may have held at the time it initiated this suit lapsed due to its failure to timely file a continuation statement, and pursuant to § 30-9A-515(4), MCA, is deemed never to having been perfected. While this result appears harsh, one court has aptly stated:

9

Although strict adherence to the Code requirements may at times lead to harsh results, efforts by courts to fashion equitable solutions for mitigation of hardships experienced by creditors in the literal application of statutory filing requirements may have the undesirable effect of reducing the degree of reliance the market place should be able to place on the Code provisions. The inevitable harm doubtless would be more serious to commerce than the occasional harshness from strict obedience.

*Sec. Natl. Bank & Trust Co. of Norman v. Dentsply Prof. Plan*, 617 P.2d 1340, 1343 (1980).

¶19 We reach the same conclusion as the District Court did, but we do so on different grounds. *Germann*, ¶ 21. We conclude the District Court properly granted summary judgment to Saulsbury.

¶20 Affirmed.

/S/ JIM RICE

We concur:

/S/ KARLA M. GRAY
/S/ W. WILLIAM LEAPHART
/S/ JOHN WARNER
/S/ BRIAN MORRIS