**THIRD DIVISION
BARNES, P. J.,
BOGGS and BRANCH, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/**

**March 30, 2015**

# In the Court of Appeals of Georgia

A14A1677. THE FOUR COUNTY BANK v. TIDEWATER EQUIPMENT CO.

BRANCH, Judge.

In June 2003 and November 2005 respectively, appellant The Four County Bank ("the Bank") provided financing for the purchase of two different pieces of foresting equipment by Shepherd Brothers Timber Company, LLC ("Shepherd"). The Bank perfected its security interests in both pieces of equipment by filing financing statements in Wilkinson County Superior Court. While the Bank's original financing statements were still effective, Shepherd sold both pieces of equipment to appellee Tidewater Equipment Company ("Tidewater"), which later resold them. In October 2008 and March 2011, more than five years after the filing of each of the original financing statements, the Bank attempted to file continuation statements as to the

equipment. After Shepherd declared bankruptcy, the Bank sued Tidewater to recover the equipment or its value. On appeal from the trial court's grant of summary judgment to Tidewater, the Bank argues that Tidewater is liable for the value of the equipment because Tidewater should have known of the Bank's perfected security interest at the time Tidewater resold the equipment. We disagree and affirm.

Although we view the record in favor of the Bank as the non-movant, the relevant facts are not in dispute. The Bank filed a purchase money financing statement as to Shepherd's 2003 Tigercat Cutter on June 5, 2003, and a purchase money financing statement as to Shepherd's 2005 Tigercat Skidder, a piece of construction equipment, on November 18, 2005. On August 30, 2007, Tidewater accepted the Cutter from Shepherd as a trade-in worth $52,500 towards Shepherd's purchase of a new piece of equipment; Tidewater resold the used Cutter to a third party the same day. On June 26, 2008, Tidewater accepted the Skidder from Shepherd as a trade-in worth at least $47,000 towards Shepherd's purchase of a second new piece of equipment; Tidewater sold the used Skidder to a third party on May 9, 2009. Tidewater did not perform any lien search before accepting the Tigercats, neither of which were required to have a motor vehicle title. The Bank did not receive any proceeds from either sale.

2

On October 31, 2008, the Bank filed a second financing statement as to the Cutter; on March 10, 2011, the Bank filed a second financing statement as to the Skidder. Shepherd filed for bankruptcy in the Middle District of Georgia on March 16, 2011. In September 2012, the Bank sued Tidewater for trover and conversion. Both sides moved for summary judgment, which the trial court granted to Tidewater because the Bank had failed to file timely continuation statements and because Tidewater lacked actual knowledge of the Bank's security interests. This appeal followed.

1. The Bank first asserts that the trial court erred when it granted Tidewater summary judgment because the Bank's security interests were perfected at the time Tidewater took possession of the equipment. We disagree.

OCGA § 11-9-515, Georgia's version of Article 9, Section 515 of the Uniform Commercial Code (UCC), provides in relevant part as follows:

> (a) *Five-year effectiveness*. Except as otherwise provided in subsection (d) of this Code section [concerning the effects of filing continuation statements], *a filed financing statement is effective for a period of five years after the date of filing* or until the twentieth day after any earlier maturity date required to be specified on the filed financing statement. (b) *Lapse and continuation of financing statement*. The effectiveness of a filed financing statement lapses on the expiration of the period of its

3

effectiveness unless before the lapse a continuation statement is filed pursuant to subsection (c) of this Code section. Upon lapse, a financing statement ceases to be effective and any security interest or agricultural lien that was perfected by the financing statement becomes unperfected, unless the security interest is perfected otherwise. *If the security interest or agricultural lien becomes unperfected upon lapse, it is deemed never to have been perfected as against a purchaser of the collateral for value.*

(c) *When continuation statement may be filed.* A continuation statement may be filed only within six months before the expiration of the five-year period specified in subsection (a) of this Code section or the occurrence of any earlier maturity date required to be specified on a filed financing statement.

(Emphasis supplied.)[1]

---

[1] UCC Article 9, former Section 403 (2), codified at former OCGA § 11-9-403 (2), provided that with exceptions not applicable here,

> a filed financing statement is effective for a period of five years from the date of filing. . . . [T]he effectiveness of a filed financing statement lapses on the . . . expiration of the five-year period . . . unless a continuation statement is filed prior to the lapse. . . . Upon lapse the security interest becomes unperfected, unless it is perfected without filing. If the security interest becomes unperfected upon lapse, it is deemed to have been unperfected as against a person who became a purchaser *or lien creditor* before lapse.

(Emphasis supplied.)

Former OCGA § 11-9-403 was superseded by Article 9's new Section 515, codified at OCGA § 11-9-515, on July 1, 2001. See Ga. L. 2001, p. 362, § 1. As the 2002 editors' comment to Section 515 notes, "[t]he deemed retroactive unperfection applies only with respect to purchasers for value; unlike former Section 9-403 (2), it does not apply with respect to lien creditors." Comment, Uniform Commercial Code

Here, although the Bank had perfected its security interests in both pieces of equipment by filing financing statements which remained effective at the time Tidewater took possession of the equipment, the Bank failed to file continuation statements in the "six months before the expiration of the five-year period" running from the date of each original financing statement. OCGA § 9-11-515 (c). OCGA § 11-9-515 (b) provides, moreover, that once each of the Bank's security interests had lapsed for failure to file a timely continuation statement, those interests "bec[ame] unperfected upon lapse," and were "*deemed never to have been perfected as against a purchaser of the collateral for value*." (Emphasis supplied.) It follows that even though the Bank's security interests in the equipment were perfected in the first instance by the filing of the original financing statements, and though they remained so throughout Tidewater's possession and disposition of the equipment, those same security interests were deemed never to have been perfected as against a purchaser for value when the Bank failed to file timely continuation statements. See *Kubota*

---

§ 9-515, n. 3. The Bank has not asserted that Tidewater could be held a lien creditor such that the "deemed retroactive unperfection" of the Bank's previous security interest would not occur here. The new version of the statute also imposes "a new burden on the secured party: to be sure that a financing statement does not lapse during the debtor's bankruptcy." Id., n. 4. It is this burden that the Bank has failed to carry.

5

*Tractor Corp. v. C & S Nat. Bank*, 198 Ga. App. 830, 831 (2) (403 SE2d 218) (1991) (a security interest that lapsed due to the secured party's failure to file a continuation statement was deemed unperfected "'as against a person who became a purchaser . . . before lapse,'" quoting former OCGA § 11-9-403 (2)); see also *Thermal Supply v. Big Sky Beef*, 346 Mont. 341, 347 (195 P3d 1227) (2008) (under UCC Article 9, Section 515, to hold that "any perfected security interest" a secured creditor "may have held at the time it initiated" its suit against the debtor "lapsed due to [the creditor's] failure to timely file a continuation statement"); *LB Folding Co. v. Gergel-Kellem Corp.*, 94 Ohio App. 3d 511, 516 (641 NE2d 222) (1994) (under UCC former Article 9, Section 403 (2), a lapse of creditor's security interest related back to time of purchase by purchaser for value, whose interest was superior to that of the previously secured creditor).

2. The only question remaining is thus whether Tidewater was a "purchaser for value" such that it took possession of the equipment free of the Bank's security interests once they lapsed. OCGA § 9-11-515 (b). The Bank asserts that because Tidewater could have discovered the Bank's then-perfected security interests on file in the local superior court at the time it purchased each of the Tigercats, Tidewater

6

(a) was not a "purchaser for value" and (b) should be held liable for converting the equipment to its own use. We disagree.

(a) OCGA § 11-9-317 (b) provides that with exceptions not argued as applying here,

> *a buyer, other than a secured party*, of tangible chattel paper, tangible documents, *goods*, instruments, or a certificated security *takes free of a security interest or agricultural lien if the buyer gives value and receives delivery of the collateral without knowledge of the security interest or agricultural lien and before it is perfected*.

(Emphasis supplied.) See *LB Folding*, 94 Ohio App. 3d at 516 (interest of purchaser for value without actual knowledge was superior to secured creditor who failed to file a continuation statement). The UCC's general provisions also specify that "[a] person 'knows' or has 'knowledge' of a fact when the person has actual knowledge of it." OCGA § 11-1-201 (25); see also *Bank of Dawson v. Worth Gin Co.*, 295 Ga. App. 256, 258 (671 SE2d 279) (2008) (under Georgia's version of the UCC, a person has "knowledge" of a fact "when he has actual knowledge of it") (punctuation and footnote omitted).

The Bank's arguments for a judicially crafted exception to the UCC's actual knowledge requirement have no basis in Georgia law. The Bank concedes that neither

7

piece of equipment ever had a motor vehicle title that would have provided Tidewater with actual notice of anyone holding a security interest on the title's face, and we have been cited no evidence that Tidewater ever had any other "actual knowledge" of the existence of the Bank's security interest, OCGA § 11-1-201 (25). Rather, with no such evidence, Tidewater accepted both pieces of equipment in exchange for credit towards Shepard's new purchases, with the result that Tidewater "takes free" of that security interest as a "buyer" who gave value, in the form of credit, for both Tigercats. OCGA § 11-9-317 (b); see also *LB Folding*, 94 Ohio App. 3d at 519 (when creditor's security interest became "unperfected" as to a prelapse purchaser for value, the purchaser's "right to the collateral" was rendered "superior to" the creditor's).

(b) Further, because Tidewater took the equipment as a purchaser for value "free and clear of the [Bank's] previously secured interest," Tidewater cannot be said to have wrongfully converted the equipment to its own use. See *Hanley Implement Co. v. Riesterer Equip.*, 150 Wis. 2d 161, 170 (1989) (under former Article 9, Section 403 (2), a creditor who failed to file a continuation statement was deemed never to have perfected its security interest as against a prelapse purchaser, with the result that the purchaser could not be held to have converted the property). The Bank's citations to cases involving converters rather than purchasers for value are thus inapposite.

8

3. The Bank's last argument against what it perceives as the "harsh" result we have reached is that in light of the UCC's requirement that all parties to secured transactions like the one at issue here are bound to act in good faith, Tidewater should have performed a search for a financing statement before selling either of the Tigercats. See OCGA § 11-1-203 ("Every contract or duty within this title imposes an obligation of good faith in its performance or enforcement"). We disagree, for two reasons. First, as we have already explained, in the absence of any evidence that either piece of equipment at issue was or should have been registered as a motor vehicle, and without any actual knowledge of any existing security interests in the Tigercats, Tidewater had no duty to investigate whether such interests existed. Second, and as other courts have noted as they held security interests to have been deemed unperfected for failure to file a timely continuation statement:

> "Although strict adherence to the Code requirements may at times lead to harsh results, efforts by courts to fashion equitable solutions for mitigation of hardships experienced by creditors in the literal application of statutory filing requirements may have the undesirable effect of reducing the degree of reliance the market place should be able to place on the Code provisions. The inevitable harm doubtless would be more serious to commerce than the occasional harshness from strict obedience."

9

*Thermal Supply*, 346 Mont. at 347, quoting *Sec. Nat. Bank & Trust Co. of Norman v. Dentsply Professional Plan*, 1980 Okla. 136 (617 P2d 1340, 1343 (I)) (1980) (applying former Article 9, Section 403 (2)).

For all these reasons, the trial court did not err when it granted Tidewater summary judgment as to the Bank's claims. We thus need not reach the Bank's contention that it should have been granted summary judgment.

*Judgment affirmed. Barnes, P. J., and Boggs, J., concur*.