ROBINSON ET AL., APPELLEES, *v.* FLYNN ET AL., APPELLANTS.

[Cite as Robinson *v.* Flynn (1982), 2 Ohio St. 3d 19.]

(No. 81-1677—Decided December 8, 1982.)

20

---

¹ With reference to the standing issue of Pioneer Bank's successors in interest, Robinson and Warren, the court of appeals stated:

*Messrs. Parrish, Beeler, Beimford, Fryman, Smith & Uhl* and *Mr. John W. Uhl,* for appellees.

*Messrs. Fiehrer & Fiehrer* and *Mr. Jacques J. Fiehrer,* for appellants.

*Per Curiam.* A threshold procedural proposition has been advanced that the sole issue before this court is a narrow one, namely, whether plaintiffs had standing to maintain a cause of action against defendants, so that discussion and resolution of issues pertaining to the merits of this controversy are improper as constituting a violation of this court's pronouncement of "* * * the policy * * * not to review questions not presented in the Court of Appeals." *F. Enterprises* v. *Kentucky Fried Chicken Corp.* (1976), 47 Ohio St. 2d 154, 163 [1 O.O.3d 90]. In the *F. Enterprises* case, appellees sought affirmative relief for the first time in the Supreme Court by way of increase of the verdict by $6,000 for special damages, where no such relief was requested in the court of appeals and no cross-appeal raising this issue had been filed by appellees from the judgment of the court of appeals. Unlike *F. Enterprises, supra,* in this case, the standing issue was decided adversely to plaintiffs in the trial court, was raised in two assignments of error filed by plaintiffs in the court of appeals which reversed the trial court on this issue, and by reason thereof is an issue placed squarely before this court for resolution and

---

"The trial court found that the note and security agreement bound only Mitchell and Bayne as individuals and held that since there was no privity of contract between appellees [*i.e.,* the defendants in the trial court] and Mitchell and Bayne, appellees having dealt only with Restaurant Services, Inc., * * * [Pioneer Bank's] successors in interest had no standing to sue appellees for return of collateral under the security agreement. This holding was erroneous."

The second assignment of error before the court of appeals stated:

"The trial court erred to the prejudice of * * * [Pioneer Bank's] successors in interest by directing a verdict in favor of defendant[s]-appellee[s] on the grounds that * * * [Pioneer Bank's] successors in interest had no standing to maintain a cause of action against defendant[s]-appellee[s] for unjust enrichment."

In sustaining the second assignment of error the court of appeals ruled:

"The doctrine of unjust enrichment prevents a person from retaining a benefit to which he is not justly entitled under circumstances in which another person has a superior equitable claim to the benefit. See *Freedline* v. *Cielensky* (1961), 115 Ohio App. 138 [20 O.O.2d 238], * * *. The application of this doctrine does not require privity between the parties. See *Indian Hill* v. *Atkins* (1950), 153 Ohio St. 562 [42 O.O. 35], * * *. The second assignment of error is sustained."

requires resolution of other issues in order to determine the rights and obligations of the litigants herein and to render complete justice.

This action was initiated by Pioneer Bank as assignee of the promissory note and security agreement between Scottie Shoppes and Bayne and Mitchell, the officers of Restaurant Services. Subsequent to the commencement of this action, the note was negotiated for valuable consideration and the security agreement assigned to Robinson and Warren, the guarantors of the note, who thus became assignees of the promissory note and security agreement from Pioneer Bank. The fact that the security interest may not have been perfected until 1975, under the provisions of R.C. 1309.21, does not affect the right of the holders of the security interest to assert their claims. Rather, it goes to the priority of the claim. See R.C. 1309.20.

The trial court found that the promissory note, since it was signed by Bayne and Mitchell without reference to their corporate capacities, was a personal obligation and not enforceable against the collateral described in the security agreement which was the corporate property of Restaurant Services. The court of appeals accepted the conclusion that the note was a personal obligation of Bayne and Mitchell. However, the security agreement named the debtor as Restaurant Services, and the note stated that "[t]his note is secured by [a] Security Agreement of even date herewith, executed by the undersigned [Bayne and Mitchell] as Debtor to the payee [Scottie Shoppes] as Secured Party." The note and security agreement evidenced an identity between the two individuals who signed and the corporation.

The security agreement, in a portion set off from the main body of the instrument, specifically and expressly names the corporate debtor as Restaurant Services, Inc. The last sentence in the promissory note refers to the debtor therein as being the same as that named in the security agreement. Reading the documents in their entirety, including the lease, leads this court to the inescapable conclusion that the intended debtor for the entire transaction was the corporation, Restaurant Services, Inc.

Since the security agreement was enforceable against Restaurant Services, the owners of the collateral, the agreement is likewise enforceable against the Flynns. R.C. 1309.12[2] mandates that a security agreement is effective according to its terms between parties, against purchasers of the collateral and against creditors. The official comment emphasizes that this section states the general validity of a security agreement. Privity, or the lack of it, plays no part in the enforceability of the security interest. Neither does sale of the collateral.[3]

---

[2] R.C. 1309.12 provides in relevant part:

"Except as otherwise provided in Chapters 1301, 1302, 1303, 1304, 1305, 1306, 1307, 1308, and 1309 of the Revised Code, a security agreement is effective according to its terms between the parties, against purchasers of the collateral, and against creditors. * * *"

[3] The fact that the buildings were judicially determined by the trial court to be part of the real estate owned by the Flynns does not insulate that property from plaintiffs' claim. There was no determination of ownership of the buildings. Even though a debtor's rights in collateral may

While we have concluded that the plaintiffs have standing to enforce the security agreement against the Flynns, numerous issues remain to be determined by the trial court, including the priority of the claims against the restaurant property, the validity of the Flynns' claimed ownership of the property,[4] and the manner in which the claims may be satisfied. The judgment of the court of appeals, which is affirmed, requires a remand of this case to the court of common pleas for further proceedings.

*Judgment affirmed and case remanded.*

CELEBREZZE, C.J., SWEENEY, LOCHER, HOLMES, C. BROWN and KRUPANSKY, JJ., concur.

W. BROWN, J., concurs in judgment only.

---

be involuntarily transferred by way of attachment, levy, garnishment or other judicial process, as stated in R.C. 1309.30, we have no evidence of any such transfer or "other judicial process" such as a levy of execution in this case. Moreover, although the rights of the *debtor* may be involuntarily transferred, the rights of the secured party remain in force despite any sale.

[4] The validity of the Flynns' claimed ownership of the property described in the security agreement, and any priority of their claim to such units, must be determined upon remand to the trial court in accordance with R.C. 1309.32, priority of security interests in fixtures, which, *inter alia,* provides:

"(A) In this section and in the provisions of sections 1309.38 to 1309.43 of the Revised Code referring to fixture filing, unless the context otherwise requires:

"(1) Goods are 'fixtures' when they become so related to particular real estate that an interest in them arises under real estate law.

"(2) A 'fixture filing' is the filing in the office where a mortgage on the real estate would be filed or recorded of a financing statement covering goods which are or are to become fixtures and conforming to the requirements of division (E) of Section 1309.39 of the Revised Code.

"'* * *

"(B) A security interest under sections 1309.01 to 1309.50 of the Revised Code may be created in goods which are fixtures or may continue in goods which become fixtures * * *.

"'* * *

"(D)(1) A perfected security interest in fixtures has priority over the conflicting interest of an encumbrancer or owner of the real estate where:

"(a) The security interest is a purchase money security interest, the interest of the encumbrancer or owner arises before the goods become fixtures, the security interest is perfected by fixture filing before the goods become fixtures or within ten days thereafter, and the debtor has an interest of record in the real estate or is in possession of the real estate; * * *

"'* * *

"(E) A security interest in fixtures, whether or not perfected, has priority over the conflicting interest of an encumbrancer or owner of the real estate where:

"(1) The encumbrancer or owner has consented in writing to the security interest or has disclaimed in writing an interest in the goods as fixtures; or

"(2) The debtor has a right to remove the goods as against the encumbrancer or owner. If the debtor's right terminates, the priority of the security interest continues for a reasonable time."

With reference to the mobile units described in the security agreement, the lease between Flynns as lessors and Restaurant Services as lessee provided a right in the lessee to remove these units without the consent of lessor as set forth verbatim in the first paragraph of this opinion.