STAR BANK, N.A., n.k.a. Firstar Bank, N.A., Appellee,

v.

MATTHEWS et al., Appellants.

[Cite as *Star Bank, N.A. v. Matthews* (2001), 144 Ohio App.3d 246.]

Court of Appeals of Ohio,
Second District, Greene County.

No. 2000CA93.

Decided June 8, 2001.

*William P. Coley II*, for appellee.

*Scot A. Stone*, for appellant Craig T. Matthews.

*Michael J. Millonig*, for appellant Craig T. Matthews & Associates, L.P.A.

FREDERICK N. YOUNG, Judge.

Craig T. Matthews and Craig T. Matthews & Associates, a legal professional association, appeal the judgment of the Greene County Common Pleas Court, which ordered them to turn over no less than $75,720.87 of accounts receivable proceeds and possession of all inventory, accounts receivable, equipment, furniture, and general intangibles of Craig Matthews and/or Craig Matthews & Associates to Firstar Bank.

Craig Matthews (hereinafter "Matthews") is an attorney licensed to practice law in the state of Ohio and has done so since 1978. In 1995, Matthews left a Dayton firm to start his own practice in Yellow Springs, Ohio. Matthews began his practice in a building owned by Star Bank, which is now Firstar Bank (hereinafter "bank"), which loaned him $50,000 to remodel the premises so that they could be used as offices. Additionally, the bank loaned Matthews and his wife money under a home equity line of credit. In order to obtain these loans, Matthews had to sign a security agreement with the bank that gave the bank a security interest in his office equipment, furniture, and accounts receivable. A provision of the security agreement permitted the bank to require that Matthews deposit all proceeds from his accounts receivable into a separate account over which only the bank would have the power of withdrawal. However, the bank never required that he do so. In 1998, Matthews's private practice was incorporated and became Craig T. Matthews & Associates, a legal profession association (hereinafter "corporation"). On April 1, 1998, the corporation purchased Matthews's equity interest in all of his equipment and furniture, which included the

secured collateral property of the bank, for $1,000. The corporation did not assume Matthews's obligations to the bank.

The corporation maintained Matthews's operating account from the private practice, simply having the bank issue new checks in the name of the corporation. Further, the corporation began billing and collecting payments on the accounts Matthews had previously established, as well as billing and collecting payments on new accounts created by the corporation. Cash and other corporate funds were also deposited into the same operating account.

Also during this period of time Matthews was divorcing his wife, Diana Matthews (hereinafter "Diana"), and no longer resided at the marital residence. During the divorce proceedings, Diana ceased making payments on the mortgage without informing Matthews and the bank filed a separate lawsuit in May 1998 for home mortgage foreclosure. Upon learning of the foreclosure action, Matthews retained the services of a bankruptcy attorney.

On August 3, 1998, the bank filed a replevin complaint that initiated these proceedings. Since the home mortgage was in default, the bank accelerated the balances due on the other two outstanding loans. Matthews filed for personal bankruptcy on August 19, 1998, staying the state court replevin action. On December 28, 1998, the bankruptcy court granted Matthews a discharge. At the conclusion of the bankruptcy case, the bank moved to have this case returned to active status.

A hearing was held on August 14, 2000, in which Matthews testified and evidence was presented. The parties stipulated that the bank was the holder of a promissory note executed by Matthews with a balance of $37,325.68 and an equiline agreement executed by Matthews and his wife with a balance of $37,476.68. In addition, the parties stipulated that the security held in exchange for the loans was a lien on all inventory, accounts receivable, equipment, furniture, general intangibles, and products and proceeds of Matthews. The trial court entered a judgment on October 11, 2000, in favor of the bank, stating:

"This [c]ourt * * * ORDERS that judgment be and hereby is awarded [to the bank] as against [Matthews] and [the corporation]. It is ORDERED [that the bank] is hereby granted permanent possession of all inventory, accounts receivables, equipment, furniture and general intangibles of [Matthews] and/or [the corporation] and further ORDERS [the corporation] to turn over to [the bank] accounts receivable proceeds of no less than $75,720.87."

Matthews and the corporation filed this timely appeal.

Appellants raise the following assignments of error:

"1. The judgment against Craig T. Matthews was contrary to federal law and the stipulations of the parties.

"2. The court erred as a matter of law by issuing a judgment for an unspecified amount and sum not certain.

"3. The court erred as a matter of law by rendering a judgment against the defendants not set off by the amount of the consent judgment entry with Diana Matthews.

"4. The trial court failed to recognize that Ohio Revised Code Section 1309.25 governs common-law security agreements."

Appellant corporation raises the following additional assignment of error:

"5. Judgment against the corporation and the corporation's assets is unsupported by the evidence and contrary to law."

If competent, credible evidence exists that supports the trial court's findings of fact and conclusions of law, an appellate court should not reverse. *Seasons Coal Co. v. Cleveland* (1984) 10 Ohio St.3d 77, 80, 10 OBR 408, 411, 461 N.E.2d 1273, 1276. However, when interpreting a statute, a reviewing court should utilize a de novo standard of review in which no deference is given to the trial court's conclusions of law. *State v. Wood* (2000), 137 Ohio App.3d 623, 739 N.E.2d 410; *Walther–Coyner v. Walther* (June 2, 2000), Montgomery App. No. 18131, unreported, 2000 WL 706849. In deciding this appeal, we will use a manifest weight standard of review for all of the assignments of error except the fourth, where we will utilize a de novo standard of review for interpreting R.C. 1309.25.

*Appellants' first assignment of error*

Matthews and the corporation argue that the trial court erroneously entered a judgment against Matthews personally and his personal assets when his debt had been discharged by the bankruptcy court. We disagree.

Section 552(A) of the Bankruptcy Code provides that "property acquired by the estate or by the debtor after the commencement of the case is not subject to any lien resulting from a security agreement entered into by the debtor before the commencement of the case." Section 552(a), Title 11, U.S.Code. R.C. 1309.12 provides that a security agreement is effective between parties, against purchasers of the collateral, and against creditors. Further, a security interest remains enforceable despite the sale of collateral. *Robinson v. Flynn* (1982), 2 Ohio St.3d 19, 2 OBR 506, 442 N.E.2d 454. Section 541 of the Bankruptcy Code provides that only assets that are part of the debtor's estate are protected by the Bankruptcy Code. Section 541, Title 11, U.S.Code. Further, Section 727 of the Bankruptcy Code clarifies that the bankruptcy discharge precludes an in personam action against Matthews for the amount owing under the promissory note, not

an in rem action to recover collateral or proceeds. Section 727, Title 11, U.S.Code.

Matthews and the corporation assert that the trial court's judgment amounts to an attempt to collect a personal judgment against Matthews from either the corporation or Matthews himself, which is barred by the Bankruptcy Code. The code does not protect the assets that the trial court ordered turned over to the bank, as these assets which are in dispute were owned by the corporation at the time Matthews filed for bankruptcy. Since the accounts receivable were not owned by the debtor at the time of the bankruptcy filing, Section 552 of the Bankruptcy Code does not apply to this situation. Further, the trial court's decision is on an in rem action for replevin of property, not a personal action on a promissory note against Matthews, which would be barred by the Bankruptcy Code. We find no error on the part of the trial court and this assignment of error is without merit and overruled.

*Appellants' second assignment of error*

Matthews and the corporation assert that the trial court's judgment is erroneous as a matter of law because it uses the terminology "no less than," which appellants assert is inherently vague. We disagree. Additionally, appellants assert that the bank failed to identify the $34,093.26 deposited in the corporation's operating account as proceeds from accounts receivable. We disagree.

*a. "no less than" terminology*

The trial court found that the bank had a security interest in all of the inventory, accounts receivable, equipment, furniture, general intangibles, and products and proceeds thereof, of Matthews. Thus, when the corporation purchased these items from Matthews, it took subject to the bank's security interest. The trial court simply ordered the corporation to turn over all of this collateral or any proceeds thereof to the bank. Additionally, the trial court found that $75,720.87 of the accounts receivable had been converted into proceeds and ordered no less than this amount of proceeds be given to the bank. We cannot find that the "no less than" terminology made this judgment inherently vague. This part of the assignment of error is without merit and overruled.

*b. Identifying proceeds*

R.C. 1309.25(B) provides "a security interest continues in collateral notwithstanding sale, exchange, or other disposition thereof unless the disposition was authorized by the secured party in the security agreement or otherwise, and also continues in any *identifiable* proceeds including collections received by the debtor." (Emphasis added). "Identifiable" has been interpreted as "requiring some ability to trace the proceeds." *Bank One, Cleveland v. Ohio Convenient*

*Food Mart, Inc.* (Aug. 23, 1991), Lake App. No. 90–L–15–157, unreported, 1991 WL 163447, citing *Miami Valley Prod. Credit Assoc. v. Klipfer* (Bankr.S.D.Ohio 1986), 62 B.R. 290, 296 (finding that proceeds commingled with other funds are not identifiable). A security interest follows secured collateral through several hands or forms only if it can be identified. *Klipfer, supra;* see *In re Seaway* (C.A.9, 1990), 912 F.2d 1125; see *Fricke v. Valley Production Credit Assn.* (Mo.App.1989), 778 S.W.2d 829. The secured creditor has the burden to trace and identify the funds as the proceeds from secured collateral. *Klipfer, supra; In re Gibson Prod. of Arizona* (C.A.9, 1976), 543 F.2d 652, 656, certiorari denied (1977), 430 U.S. 946, 97 S.Ct. 1583, 51 L.Ed.2d 794.

■ Matthews and the corporation argue that the trial court erred by finding $34,093.26 of the corporation's deposits were proceeds from accounts receivable and should be turned over to the bank. Matthews asserts that the bank did not present evidence identifying the $34,093.26 as proceeds from accounts receivable. At trial, the bank presented evidence that on August 19,1998, the value of the accounts receivable was $41,627.61. Matthews testified that between April 2, 1998, immediately after the corporation was formed, and May 18, 1998, the corporation deposited into its operating account $34,093.26. The bank argued that this $34,093.26 was proceeds from accounts receivable and should be turned over to the bank. At trial Matthews testified that although some of the $34,093.26 was proceeds from accounts receivable, the amount also was composed of capital contributions, court costs, or retainers, which were not proceeds from secured collateral. Matthews testified that he did not recall how much of the amount was accounts receivable proceeds nor did he have with him records that would show this.[1] Thus, evidence existed identifying the proceeds from the accounts receivable in the corporation's operating account via Matthews's testimony that some of the $34,093.26 were proceeds.

Despite Matthews's argument to the contrary, Matthews's testimony amounted to competent, credible evidence that the $34,093.26 was accounts receivable proceeds. Therefore, competent, credible evidence existed for the trial court's determination that the value of the proceeds from the accounts receivable was $34,093.26 more than $41,627.61, the value of accounts receivable in August 1998, for a total value of $75,720.87. The second assignment of error is without merit and overruled.

*Appellants' third assignment of error*

---

1. The bank had issued a subpoena for Matthews to bring financial documents that would show the origin of these deposits; however, Matthews did not comply and instead moved to quash the subpoena. Matthews asserted that the subpoena was an improper manner to conduct discovery, improperly served, and filed too close to trial. The trial court overruled him but failed to grant the bank's motion for contempt or a continuance to obtain the documents.

■ Matthews and the corporation argue that the trial court erred by failing to offset the judgment against them by the amount of the consent judgment entry with Matthews's former wife, Diana. We disagree.

Diana entered into a consent judgment entry with the bank that provided that if Diana forfeits to the bank all of her rights to certificates of deposit held by the bank and agrees to pay $12,500 by September 28, 2000, the judgment of $37,476.68 will be considered satisfied. The amount due under the equiline agreement was $37,476.68. Matthews and the corporation argue that the trial court's judgment entry erroneously included this amount in the judgment entry against Matthews and the corporation. However, as discussed previously, the finding of the trial court was an in rem action to obtain replevin of the collateral. The trial court's judgment determining the amount of proceeds awarded to the bank is based on the value of the collateral, not an in personam action. R.C. Chapter 1309 dictates the application of collateral proceeds, specifically after the collateral is turned over to the creditor, the bank, and is liquidated, any surplus shall be returned to the debtor, appellants. Thus, the trial court did not err and the appellants' third assignment of error is without merit and overruled.

*Appellants' fourth assignment of error*

■ Matthews and the corporation argue that the trial court erred by failing to apply R.C. 1309.25(D), which would limit the bank's recovery of proceeds to those collected within ten days of filing for bankruptcy. We disagree.

R.C. 1309.25(D) states:

"In the event of insolvency proceedings instituted by * * * a *debtor*, a secured party with a perfected security interest in proceeds has a perfected security interest only in the following proceeds:

"* * *

"(4) In all cash and deposit accounts of the debtor in which proceeds have been commingled with other funds, but the perfected security interest under this division is:

"(a) Subject to any right of set-off; and

"(b) Limited to an amount not greater than the amount of any cash proceeds received by the *debtor* within ten days before the institution of the insolvency proceedings * *. *." (Emphasis added.)

Matthews and the corporation argue that this limits the bank to only the proceeds received ten days prior to Matthews's filing for bankruptcy. The bank argues that Matthews was the individual who filed for bankruptcy and received the protection provided in R.C. 1309.25(D), not the corporation, which had possession of the accounts receivable and proceeds. As stated previously, the

bank, as a secured creditor, has rights in the collateral despite the sale of the collateral. Therefore, the bank is entitled to the proceeds from the collateral, the accounts receivable, even though they were sold to the corporation. We agree with the bank that R.C. 1309.25(D) protects the debtor who filed for bankruptcy, not the entities who purchased the collateral.

Matthews asserts that the bank erroneously argued at trial that Matthews and the corporation were one and the same and that nothing more than a name change occurred. Matthews argues that if this assertion by the bank were true, then the corporation is the same as himself and would also be protected by R.C. 1309.25(D). However, Matthews argued at trial and elsewhere in his appellate brief and the evidence supports a conclusion that the corporation was properly formed and a separate entity from Matthews. Thus, regardless of any previous erroneous argument by the bank, Matthews and the corporation are separate entities and R.C. 1309.25(D) protects only Matthews, since he was the debtor who filed for bankruptcy. Therefore, this assignment of error is without merit and overruled.

*Appellant corporation's additional assignment of error*

The corporation argues that it is a separate and distinct entity that was not a party to the security agreement and therefore should not be held liable for Matthews's discharged obligations absent fraud or mistake. We disagree.

R.C. 1309.25(B) provides that "a security interest continues in collateral notwithstanding sale, exchange, or other disposition thereof." The nonexistence of privity between the current possessor of collateral and the holder of the secured interest in the collateral has no effect on the ability to enforce the security agreement. *Robinson, supra.* Thus, despite the sale of collateral, a security agreement is enforceable against purchasers of collateral. *Id.*

The corporation argues that since it was not a party to the security agreement, the bank must pierce the corporate veil by pleading and proving fraud in order to hold it responsible for the return of the collateral of which it took possession. The corporation asserts that since this was not done, the trial court erred in rendering judgment against it. However, this is simply inaccurate. As stated clearly in *Robinson,* a security agreement is enforceable against a purchaser of collateral even if the purchaser was not a party to the agreement. Thus, since the corporation purchased Matthews's collateral in which the bank had a secured interest, in a replevin action, the trial court may order the transfer of the collateral or the proceeds therefrom to the bank for liquidation. Therefore, we

do not find that the trial court erred and this assignment of error is without merit and overruled.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

WOLFF, P.J., and GRADY, J., concur.