OPINION
{¶ 1} This matter is before the Court on the Notice of Appeal of Robert McClure, filed November 16, 2007. In December, 1988, McClure entered into a contract with Mike Alexander, of Mike Alexander Construction, for the construction of an addition at McClure's home at 5104 Rebert *Page 2 
Pike, Springfield, Ohio. The project was completed in June of 1989. In August of 2004, McClure discovered that the walls to his addition had become rotten due to water damage. The extent of the damage required McClure to demolish the addition. Mike Alexander died January 7, 2007. On August 10, 2007, McClure filed a Complaint against Deborah Alexander, Executor of the Estate of Mike Alexander, formerly DBA Mike Alexander Construction ("Alexander"). McClure sought damages of $70,000.00, arguing the "rot was caused by siding that had been applied incorrectly directing water in toward the wall instead of away from the wall."
 {¶ 2} On August 30, 2007, Alexander filed a Motion to Dismiss, arguing that McClure's claims were barred by R.C. 2305.131, the statute of repose, which limits to ten years the period within which a cause of action may accrue for damages that are based on a defective improvement to real property. McClure filed a Memorandum Contra Defendant's Motion to Dismiss, arguing that R.C. 2305.131 violates the right-to-a-remedy clause of Section 16, Article I, of the Ohio Constitution. On October 8, 2007, Alexander filed a Reply. On October 30, 2007, the trial court entered Judgment, determining without any analysis that R.C. 2305.131 is constitutional, that McClure's Complaint was filed beyond the ten year period permitted by the statute, and granting Alexander's Motion to Dismiss.
 {¶ 3} By way of brief background, a previous version of the statue of repose before us was declared unconstitutional in Brennaman v. R.M.I.Co., 70 Ohio St.3d 460, 629 N.E.2d 425, 1994 Ohio 322, the authority upon which McClure primarily relies herein.[1] In finding R.C.2305.131 *Page 3 
unconstitutional, Brennaman overruled Sedar v. Knowlton ConstructionCo. (1990), 49 Ohio St.3d 193, 551 N.E.2d 939, which had affirmed the constitutionality of the same statute at issue in Brennaman. Alexander relies upon the rationale of Sedar as applied to the language of the current version of the statute. After the parties submitted their briefs, the Supreme Court of Ohio revisited its holdings in bothBrennaman and Sedar, substantially narrowing its holding inBrennaman and adopting Sedar's rationale. Groch v. Gen. MotorsCorp., Slip Opinion No. 2008-Ohio-546 (affirming constitutionality of the products liability statute of repose setting a ten year limit for the accrual of a claim against the manufacturer of a product). On February 27, 2008, Alexander filed a Notice of Supplemental Authority, citing Groch.
 {¶ 4} We note that Alexander argues initially that McClure failed to present any issues for review, contrary to App. R. 16(A)(4), and states that it is within our "discretion to either disregard the assignment of error and/or dismiss the appeal based upon Plaintiff s failure to include a statement of issues presented for review." We will address the merits of McClure's appeal.
 {¶ 5} McClure asserts one assignment of error as follows:
 {¶ 6} "THE TRIAL COURT ERRED BY DISMISSING APPELLANT'S COMPLAINT ON THE BASIS OF AN UNCONSTITUTIONAL STATUTE OF REPOSE."
 {¶ 7} "`A motion to dismiss a complaint for failure to state a claim upon which relief may be granted, pursuant to Civ.R. 12(B)(6), tests the sufficiency of a complaint. In order to prevail, it must appear beyond doubt from the complaint that the plaintiff can prove no set of facts entitling him to relief. (Internal citation omitted). The court must then construe the complaint in the light most favorable to the plaintiff, presume all of the factual allegations in the complaint as true, and make all reasonable inferences in favor of the plaintiff. (Internal citation omitted). We review de novo the *Page 4 
trial court's granting of a Civ.R. 12(B)(6) motion to dismiss.'"Hogue v. Navistar Interntl. Truck Engine, Clark App No. 2006 C A 85,2007-Ohio-4720. When interpreting a statute, we also utilize a de novo standard of review and give no deference to the trial court's conclusions of law. Star Bank, N.A. v. Matthews (2001),144 Ohio App.3d 246, 250, 759 N.E.2d 1274.
 {¶ 8} "It is difficult to prove that a statute is unconstitutional. All statutes have a strong presumption of constitutionality. (Internal citation omitted). Before a court may declare unconstitutional an enactment of the legislative branch, `it must appear beyond a reasonable doubt that the legislation and constitutional provisions are clearly incompatible.' (Internal citation omitted).
 {¶ 9} "A party seeking constitutional review of a statute may proceed in one of two ways: present a facial challenge to the statute as a whole or challenge the statute as applied to a specific set of facts. (Internal citation omitted)." Arbino v. Johnson Johnson (2007), ___ N.E.2d ___, 2007-Ohio-6948.
 {¶ 10} The current version of the statute of repose provides in relevant part as follows: "* * * [N]o cause of action to recover damages for bodily injury, an injury to real or personal property, or wrongful death that arises out of a defective and unsafe condition of an improvement to real property and no cause of action for contribution of damages sustained as a result of bodily injury, an injury to real or person property, or wrongful death that arises out of a defective and unsafe condition of an improvement to real property shall accrue against a person who performed services for the improvement to real property or a person who furnished the design, planning, supervision of construction, or construction of the improvement to real property later than ten years from the date of substantial completion of such improvement." R.C. 2305.131(A)(1). If an alleged defect is *Page 5 
discovered during the ten year period but less than two years before the expiration thereof, the plaintiff may still bring a claim within two years of discovery of the defect. R.C. 2305.131(A)(2). The statute provides exceptions if the defendant engages in fraud and also if there is an express warranty beyond the ten year statute of repose. R.C.2305.131(C) and (D). The statute is "purely remedial in operation." R.C.2305.131(F).
 {¶ 11} McClure argues that the statute violates the right-to-a-remedy provision in Section 16, Article I of the Ohio Constitution, which provides: "All courts shall be open, and every person, for an injury done him in his land, goods, person, or reputation, shall have a remedy by due course of law, and shall have justice administered without denial or delay." "This right protects against laws that completely foreclose a cause of action for injured plaintiffs or otherwise eliminate the ability to receive a meaningful remedy." Arbino, citingBrennaman.
 I. Brennaman {¶ 12} As mentioned above, Brennaman determined that a previous version of the statute of repose violated Section 16, Article I of the Ohio Constitution. Id., at 467. The version of the statute in effect at the time Brennaman provided in relevant part as follows: "No action to recover damages for any injury to property, real or personal, or for bodily injury or wrongful death, arising out of the defective and unsafe condition of an improvement to real property, nor any action for contribution or indemnity for damages sustained as a result of said injury, shall be brought against any person performing services for or furnishing the design, planning, supervision of construction, or construction of such improvement to real property, more than ten years after the performance or furnishing of such services and construction. * * *" Id., at 463.
 {¶ 13} In Brennaman, defendant Bechtel Corporation was involved in converting an existing *Page 6 
facility into a titanium metals plant, a facility where liquid sodium was piped from railroad cars to storage tanks. Id., at 461. Bechtel's involvement in the construction of the sodium handling system ended in 1958. Id. In 1986, two employees of R.M.I. Co. were killed and another was injured when a molten stream of sodium escaped from the piping system and ignited while the employees attempted to replace a valve. Id., at 462. The trial court granted summary judgment to Bechtel on the subsequent complaint of negligence, products liability and breach of warranty on the basis that the allegations were brought beyond the ten year period provided by the statute of repose, and the court of appeals affirmed. Id.
 {¶ 14} In finding the statute of repose unconstitutional, the Supreme Court of Ohio determined that R.C. 2305.131, contrary to law, "deprived the plaintiffs of the right to sue before they knew or could have known about their or their decedents' injuries." Id., at 466. The Court further noted that the statute precluded claimants from seeking a remedy against negligent tortfeasors "once ten years have elapsed since the tortfeasor rendered the flawed service." Id. The Supreme Court declared, quoting Justice Douglas' dissent in Sedar, "`R.C. 2305.131 effectively closes the courthouse to [Brennaman] and individuals like [her] in contravention of the express language of Section 16, Article I, thereby violating constitutionally protected rights.' * * * Today we reopen the courthouse doors by declaring that R.C. 2305.131, a statute of repose, violates the right to a remedy guaranteed by Section 16, Article I of the Ohio constitution, and is, thus, unconstitutional." The Court then overruled Sedar. Id., at 467. The Court determined that the plaintiffs had filed their complaints within a reasonable time, namely within a year after their causes of action arose, and the court reversed and remanded the matter for trial. Id.
 II. Sedar *Page 7 {¶ 15} In Sedar, a college student put his hand and arm through a wire-reinforced glass panel in a door of his dormitory in 1985.Sedar, at 194. Construction of the dormitory was completed in 1966. Id. In 1987, Sedar brought a personal injury action against the architects and contractors of the dormitory, and the trial court's decision granting summary judgment in favor of the defendants based upon the statute of repose was affirmed on appeal. Id.
 {¶ 16} Sedar argued to the Supreme Court of Ohio that the statue of repose violated the due process and right-to-a-remedy provisions of Section 16, Article I, and the equal protection guarantees of Section 2, Article I of the Ohio Constitution. Id., at 199. The Sedar Court began its analysis by distinguishing between a statute of limitations and a statute of repose as follows: "Unlike a true statute of limitations, which limits the time in which a plaintiff may bring suit after the cause of action accrues, a statute of repose, such as R.C. 2305.131, potentially bars a plaintiff s suit before the cause of action arises." Id., at 195.
 {¶ 17} The Court then noted that construction statutes of repose were enacted "in the late 1950s and early 1960s in response to the expansion of common-law liability of architects and builders to third parties who lacked `privity of contract.'" At early common law, the doctrine of privity of contract prevented third parties, such as Brennaman and Sedar, from recovering damages from an architect or builder based on a defective or unsafe condition after a structure had been completed and accepted by an owner. With the demise of the doctrine of privity, architects and builders were increasingly subject to third-party litigation years after their work on a structure was completed. Id.
 {¶ 18} The Court briefly noted that the statute expressly does not apply to persons in possession or control of the premises at the time of the injury, and that it impliedly does not apply to *Page 8 
those who supply materials rather than services to be used in constructing the improvement. Id., at 196. Further, the Court noted that the statute does not apply to actions on the contract. Id.
 {¶ 19} The Court repeatedly noted the often delayed occurrence of damages that characterize the construction cases and determined that the statute bore a real and substantial relation to the public health, safety, morals and general welfare, and that the statute was not unreasonable or arbitrary. Id., at 199-200. Specifically, the court determined in part, "Given * * * the lengthy anticipated useful life of an improvement to real property, designers and builders were confronted with the threat of defending claims when evidence was no longer available. * * * [R.C. 2305.131] attempts] to mitigate this situation by limiting the duration of liability and the attendant risks of stale litigation, a public purpose recognized as permissible under due process analysis. * * *" Id., at 200. "Because extended liability engenders faded memories, lost evidence, the disappearance of witnesses, and the increased likelihood of intervening negligence * * * the General Assembly, as a matter of policy, limited architects' and builders' exposure to liability by barring suits brought more than ten years after the performance of their services in the design or construction of improvements to real property." The Court determined that the legislature's selection of a ten year period "to achieve its valid goal of limiting liability here was neither unreasonable nor arbitrary," and it cited statistics in support of its conclusion. Id.
 {¶ 20} The Court recognized that the statute bars all claims after ten years, despite their merit or lack thereof, and the Court recognized that its role was not to pass judgment on the "wisdom of legislative enactments." Id., at 201. The Court agreed that "`[t]he legislature could reasonably conclude that the statistical improbability of meritorious claims after a certain length of time, * * * and the inability of courts to adjudicate stale claims weigh more heavily than allowing the *Page 9 
adjudication of a few meritorious claims.'" Id. The Court held that the statute did not violate the due process provision of the Ohio Constitution. Id.
 {¶ 21} With respect to the right-to-a-remedy provision, Sedar argued that the statute of repose violated that provision of the Constitution based on the Court's recent decision regarding the four-year statute of repose for medical malpractice actions in Hardy v. VerMeulen (1987),32 Ohio St.3d 45, 46, 512 N.E.2d 626. (finding, "R.C. 2305.11, if applied to those who suffer bodily injury from medical malpractice but do not discover that injury until four years after the act of malpractice, accomplishes one purpose — to deny a remedy for the wrong. In other words, the courts of Ohio are closed to those who are not reasonably able, within four years, to know of the bodily injury they have suffered").
 {¶ 22} The Sedar court distinguished the issue presented in the medical malpractice cases from the issue presented in Sedar as follows: "Operation of the medical malpractice repose statute takes away an existing, actionable negligence claim before the injured person discovers it. Thus, `it denies legal remedy to one who has suffered bodily injury, * * *' in violation of the right-to-a-remedy guarantee. * * * In contrast, R.C. 2305.131 does not take away an existing cause of action, as applied in this case. `* * * [I]ts effect, rather, is to prevent what might otherwise be a cause of action, from ever arising. Thus injury occurring more than ten years after the negligent act allegedly responsible for the harm, forms no basis for recovering. The injured party literally has no cause of action. * * *" Sedar, at 201-02.
 {¶ 23} The Sedar Court noted that the right-to-a-remedy provision can be traced to the common law principle ubi jus ibi remedium — there is no wrong without a remedy, which
 {¶ 24} "was melded into the federal common law by the decision inMarbury v. Madison *Page 10 
(1803), 5 U.S. (1 Cranch) 137, 163, 2 L.Ed. 60: `The government of the United States has been emphatically termed a government of laws, and not of men. It will certainly cease to deserve this high appellation, if the laws furnish no remedy for the violation of a vested legal right.'" Id., at 202.
 {¶ 25} The Sedar Court further noted that common law causes of action are not "`immune from legislative attention.'" Id., quotingHardy. "`No one has a vested right in rules of the common law. Rights of property vested under the common law cannot be taken away without due process, but the law itself as a rule of conduct may be changed at the will of the legislature unless prevented by constitutional limitations. The great office of statutes is to remedy defects in the common law as they are developed, and to adapt it to new circumstances.'" Id.
 {¶ 26} The Sedar Court commented that several states construing right-to-a-remedy clauses concur in the following view: "Societal conditions occasionally require the law to change in a way that denies a plaintiff a cause of action available in an earlier day. * * * `This Court would encroach upon the Legislature's ability to guide the development of the law if we invalidated legislation simply because the rule enacted by the legislature rejects some cause of action currently preferred by the courts. To do so would be to place certain rules of the "common law" and certain non-constitutional decisions of courts above all change except by constitutional amendment. Such a result would offend our notion of the checks and balances between the various branches of government, and the flexibility required for the healthy growth of the law.' * * * The right-to-a-remedy provision of Section 16, Article I applies only to existing, vested rights, and it is state law which determines what injuries are recognized and what remedies are available." The Court concluded that the statute did not violate Section16, Article I of the Ohio Constitution. Id.
 {¶ 27} In considering equal protection principles, the Sedar Court noted, "the vast majority *Page 11 
of states have upheld similar architect-builder statutes of repose, holding the legislative classifications therein were based on valid distinctions." Id., at 203. According to the Sedar Court, "Owners, tenants and others actually in possession of improvements to real property, who are expressly excluded from operation of the statute, have continuing control of the premises and are responsible for their repair and maintenance. In contrast, architects and builders have no control over the premises once they are turned over to the owner, after which time" other factors may influence the condition of the improvement. Id., at 203-04. The Court found no equal protection violation.
 III. Groch {¶ 28} In March, 2005, Douglas Groch was injured by a trim press while working at a General Motors plant in Toledo, Ohio. Groch sought damages from the manufacturers of the trim press based on alleged product defects. Defendants removed the case to the U.S. District Court for the Northern District of Ohio. The manufacturers of the trim press argued that they were immune from liability under the terms of Senate Bill 80, a tort reform[2] bill that became effective April 7, 2005, and added a ten-year statue of repose to Ohio's products liability statue. Groch argued, inter alia, that the statue of repose violated the right-to-a-remedy provision of Section 16, Article I of the Ohio Constitution. The federal court stayed the proceedings before it and certified nine questions of state law to the Supreme Court of Ohio. In a 6-1 decision, on February 21, 2008, the Supreme Court of Ohio determined that the ten-year statute of repose in Ohio's products liability statute did not violate the Ohio Constitution. Groch, at ¶ 154. *Page 12 
 {¶ 29} The statute at issue in Groch provided as follows in relevant part: "* * * no cause of action based on a product liability claim shall accrue against the manufacturer or supplier of a product later than ten years from the date that the product was delivered to its first purchaser or first lessee who was not engaged in a business in which the product was used as a component in the production, construction, creation, assembly, or rebuilding of another product." R.C.2305.10(C)(1). The statute "is purely remedial in operation and shall be applied in a remedial manner." R.C. 2305.10(G).
 {¶ 30} The petitioner in Groch relied upon Brennaman and the stare decisis value of that decision. Groch, at ¶ 131. The respondents arguedthat Brennaman should be overruled "consistent with the required presumptions of constitutionality and the holdings of a clear maj ority of sister state courts." Id., at ¶ 132. Finally, the respondents argued that "the factors set forth in Westfieldlns. Co. v. Galatis,100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, ¶ 48, lead to the conclusion that Brennaman should be overruled." Id.
 {¶ 31} In revisiting Sedar and Brennaman, the Supreme Court characterized Sedar as a "thorough and concise opinion that fully sustained each of its specific conclusions with extensive reasoning." Id., at ¶ 136. In contrast, in discussing Brennaman, the Groch Court determined, "In an abbreviated discussion devoid of any in-depth analysis, a majority of this court simply set forth the text of Section 16, Article I; cited one case, Burgess v. Eli Lilly Co. (1993),66 Ohio St.3d 59, 61, 609 N.E.2d 140, for the proposition that the General Assembly is constitutionally precluded from depriving a claimant of a right to a remedy before the claimant knew or should have known of the injury; and summarily declared that the statute, because it was a statute of repose, deprived the plaintiffs of the right to sue those who had negligently designed or constructed improvements to real *Page 13 
property once ten years elapsed after the negligent service, and was thus unconstitutional." Id., at ¶ 126.
 {¶ 32} The Groch Court noted, "`While stare decisis applies to the rulings rendered in regard to specific statutes, it is limited to circumstances "where the facts of a subsequent case are substantially the same as a former case." Rocky River v. State Emp. Relations Bd.
(1989), 43 Ohio St.3d 1, 5, 539 N.E.2d 103. We will not apply stare decisis to strike down legislation enacted by the General Assembly merely because it is similar to previous enactments that we have deemed unconstitutional. To be covered by the blanket of stare decisis, the legislation must be phrased in language that is substantially the same as that which we have previously invalidated.' Id." Id., at ¶ 104.
 {¶ 33} Brennaman, the Groch Court determined, "failed to accord proper respect to the principle of stare decisis," and "led to a sweeping repudiation by implication of not just the specific statute of repose before it, but of all statutes of repose in general, including presumably those enacted after Brennaman was decided." Id., at ¶¶ 137-138. In contrast, the Court determined, the analysis inSedar demonstrates that "the constitutionality of any specific statute of repose should turn on the particular features of the statute at issue, and that such a statute should be evaluated narrowly within its specific context." Id.
 {¶ 34} The Groch Court then specifically set forthBrennaman's deficiencies as follows: Brennaman failed to consider the presumption of constitutionality, and it "accorded no deference to the General Assembly's determination of public policy as expressed in the statue under review"; Brennaman did not consider the "critical distinction" between a statute of repose and a statute of limitation;Brennaman did not explain why the plaintiff s right to a remedy was violated even though *Page 14 
other avenues of recovery may have been available; Brennaman did not address the concerns at issue subsequent to the demise of the privity doctrine, such as the interests of architects and builders in avoiding stale litigation; Brennaman ignored the concerns of builders who may be subject to suit but have no ability to fix a problem that arises long after the completion of a project. Id., at ¶¶ 141-145.
 {¶ 35} In light of Brennaman's numerous deficiencies, theGroch Court narrowed Brennaman's applicability as follows: "BecauseBrennaman did not involve a challenge to a products-liability statute of repose, as the instant case does, that decision is not directly on point and can arguably apply only because of its overexpansive language. We confine Brennaman to its particular holding that former R.C. 2305.131, the prior statute of repose for improvements to real property, was unconstitutional. It is entitled to nothing more. To the extent thatBrennaman stands for the proposition that all statutes of repose are repugnant to Section 16, Article I, we expressly reject that conclusion." Id., at ¶ 146. The court did not overruleBrennaman, instead it "simply decline[d] to follow its unreasoned rule in contexts in which it is not directly controlling." Id., at ¶ 147. TheGroch court went on to specifically adopt Sedar's rationale, "finding its holding is based on proper construction of the requirements of Section 16, Article I." Id., at ¶ 148.
 {¶ 36} In completing its analysis, the Court noted that the statute before it differed from the statute of repose analyzed in Sedar andBrennaman, but that it similarly potentially bars a plaintiffs suit before it arises. The statute, therefore, prevents the vesting of a plaintiff s claims if the product that caused the injury was delivered to the end user more than ten years after the plaintiff was injured. "This feature of the statute triggers the portion of Sedar's fundamental analysis concerning Section 16, Article I that is dispositive of our inquiry here. Because such an injured party's cause of *Page 15 
action never accrues against the manufacturer or supplier of the product, it never becomes a vested right." Id., at ¶ 149.
 IV. Analysis {¶ 37} Our analysis begins with the strong presumption that R.C.2305.131 is constitutional. Arbino. We are also mindful that it is not our duty to evaluate the wisdom of R.C. 2305.131. Sedar, at 201. Further, we are attentive to the legislative objective behind R.C.2305.131, namely to refine Ohio's tort law, in the context of the construction cases, to balance the rights of claimants against the rights of persons providing services, design, planning, supervision or construction for the improvement of real property, the useful life of which may be decades long, and to thereby preclude the inherent risks of stale litigation. Sedar, at 200.
 {¶ 38} We note that remedial legislation such as R.C. 2301.131 is to be construed "in order to effectuate the legislative purpose."Gibson v. State Farm Mutual Insurance Co. (1997), 123 Ohio App.3d 216,224, 704 N.E.2d 1; R.C. 1.11. The General Assembly, in fact, when enacting the current version of the statute, made its purpose behind the reenactment of R.C.2305.131 clear as follows: "In enacting section2305.131 of the Revised Code in this act, it is the intent of the General Assembly to do all of the following:
 {¶ 39} "(1) To declare that the ten-year statute of repose prescribed by section 2305.131 of the Revised Code, as enacted by this act, is a specific provision intended to promote a greater interest than the interest underlying the general four-year statute of limitations prescribed by section 2309.09 of the Revised Code, the general two-year statute of limitations prescribed by section 2305.10 of the Revised Code, and other general statutes of limitation prescribed by the Revised Code;
 {¶ 40} "(2) To recognize that, subsequent to the completion of the construction of an *Page 16 
improvement to real property, all of the following generally apply to the persons who provided services for the improvement or who furnished the design, planning, supervision of construction, or construction of the improvement:
 {¶ 41} "(a) They lack control over the improvement, the ability to make determinations with respect to the improvement, and the opportunity or responsibility to maintain or undertake the maintenance of the improvement;
 {¶ 42} "(b) They lack control over other forces, uses, and intervening causes that may cause stress, strain, or wear and tear to the improvement.
 {¶ 43} "(c) They have no right or opportunity to be made aware of, to evaluate the effect of, or to take action to overcome the effect of the forces, uses, and intervening causes described in division (E)(5)(b) of this section.
 {¶ 44} "(3) To recognize that, more than ten years after the completion of the construction of an improvement to real property, the availability of relevant evidence pertaining to the improvement and the availability of witnesses knowledgeable with respect to the improvement is problematic;
 {¶ 45} "(4) To recognize that maintaining records and other documentation pertaining to services provided for an improvement to real property or the design, planning, supervision of construction, or construction of an improvement to real property for a reasonable period of time is appropriate and to recognize that, because the useful life of an improvement to real property may be substantially longer than ten years after the completion of the construction of the improvement, it is an unacceptable burden to require the maintenance of those types of records and other documentation for a period in excess of ten years after that completion;
 {¶ 46} "(5) To declare that section 2305.131 of the Revised Code, as enacted by this act, *Page 17 
strikes a rational balance between the rights of prospective claimants and the rights of design professionals, construction contractors, and construction subcontractors and to declare that the ten-year statute of repose prescribed in that section is a rational period of repose intended to preclude the pitfalls of stale litigation but not to affect civil actions against those in actual control and possession of an improvement to real property at the time that a defective and unsafe condition of that improvement causes an injury to real or personal property, bodily injury, or wrongful death." 2004 SB 80 § 3, eff 4-7-05.
 {¶ 47} We note that the facts of this matter illustrate the validity of the legislature's concern regarding stale litigation. Mike Alexander completed the addition to McClure's home fifteen years before McClure discovered the defect. Alexander is now deceased, making any defense of McClure's claim even more problematic.
 {¶ 48} We further approach our analysis mindful of the distinction between a statute of limitation, which extinguishes, after a period of time, the right to prosecute a cause of action that has accrued, and a statute of repose, which sets a time period within which a claim must accrue and bars that claim after the set period expires. Sedar, at 195.
 {¶ 49} We note that R.C. 2305.131 does not in every instance necessarily deprive a plaintiff of a right to a remedy; prior to the expiration of the 15 year statute of limitations, an action on the contract may be available for an owner against an architect or builder with whom he contracted. R.C. 2305.06.
 {¶ 50} Finally, we examine the particular features of R.C. 2305.131 to resolve the issue before us, namely whether, as McClure argues, the doctrine of stare decisis requires us to strike down the current version of the statute of repose. In other words, we must determine whether or not the *Page 18 
current version of R.C. 2305.131 is "substantially the same" as the previous version overruled in Brennaman, the "unreasoned rule" of which remains in constricted effect.
 {¶ 51} The previous version of the statute provided in part, "no action * * * shall be brought," while the current version, like the constitutional statute of repose in Groch, provides in part, "no cause of action * * * shall accrue." We agree with Alexander, the "current version of R.C. 2305.131 recognizes that a true statute of repose actually prevents a cause of action from accruing rather than preventing a plaintiff from bringing an action after accrual," like a statute of limitation. As noted by the Groch Court, the legislature is free to modify or abolish common law actions in which no one has a vested right; by its language, the current version of R.C. 2305.131 "can prevent claims from ever vesting [if the improvement was substantially completed] more than ten years before the injury occurred." Id., at ¶ 149. In other words, McClure's cause of action against Alexander never accrued, and it accordingly never became a vested right. As inGroch, "this feature of the statute triggers the portion of Sedar's
fundamental analysis concerning Section 16, Article I that is dispositive of our inquiry."
 {¶ 52} Another difference between the current version of the statute and the one before the Court in Sedar and Brennaman is that the current version allows a plaintiff to bring a claim beyond the ten year period if the claim was discovered within that period but less than two years before its expiration. The current version further makes exceptions where the defendant has engaged in fraud and where an express guarantee of workmanship has been given that exceeds the ten year period.
 {¶ 53} Having carefully reviewed the particular features of R.C.2305.131, we conclude that it is sufficiently different from the previous version considered in Brennaman "to avoid the blanket application of stare decisis." Groch, at ¶ 106, quoting Arbino. In other words, Brennaman is not *Page 19 
directly controlling.[3] McClure's sole assignment of error is overruled, and the decision of the trial court is affirmed.
WOLFF, P.J. and GRADY, J., concur.
[1] A second version of R.C. 2305.131 was also found unconstitutional on the basis that the bill in which it was contained violated the "one subject rule." State ex rel. Ohio Academy of Trial Lawyers v.Sheward (1999), 86 Ohio St.3d 451, 715 N.E.2d 1062, 1999-Ohio-123.
[2] For a discussion of tort reform in Ohio and stare decisis, seeArbino (upholding other tort reform measures that were, like the provisions of R.C. 2305.131, contained in S.B. 80; "The statutes before us here are sufficiently different from the previous enactments to avoid the blanket application of stare decisis and to warrant a fresh review of their individual merits.")
[3] While the Groch Court expressly declined to overruleBrennaman, we note that the majority in effect accomplished a "de facto overruling" of a decision which "has morphed from a case worthy of citation as part of this court's well-settled jurisprudence to an object of derision * * * ." Groch, Pfeifer, J., concurring in part and dissenting in part. *Page 1